**E-FILED on** 2/12/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BARBARA BAUMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAIMLERCHRYSLER AG, and DOES 1 thorough 50, inclusive,<br><br>    Defendants. | No. C-04-00194 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>**[Re Docket Nos. 97, 126]** |

By order dated November 22, 2005, the court tentatively granted DaimlerChrysler AG's ("DCAG") motion to dismiss for lack of personal jurisdiction but allowed the plaintiffs to undertake limited jurisdictional discovery. *Bauman v. DaimlerChrysler AG*, 2005 U.S. Dist. Lexis 31929 (N.D. Cal. Nov. 22, 2005).[1] For the reasons set forth below, the court determines that its tentative ruling that general jurisdiction over DCAG is lacking is correct and grants DCAG's motion to dismiss.

---

[1] Further citations to this order will be merely to the "Order" and use the pagination of the slip copy.

## I. BACKGROUND

As set forth in greater detail in this court's prior order, the plaintiffs are twenty-three people, one of whom is a citizen of Chile and the rest of whom are citizens of Argentina, all of whom allege that the entity now known as DaimlerChrysler Argentina ("DC Argentina") collaborated with the Argentine government to kidnap, detain, torture, or kill the plaintiffs or their relatives during Argentina's military regime of 1976 to 1983, known as the "Dirty War." 1st Am. Compl. ¶¶ 1-2. Claiming that DC Argentina is either a division or wholly-owned subsidiary of DCAG, plaintiffs bring this action against DCAG ostensibly under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350,[2] the Torture Victims Protection Act of 1991 ("TVPA"), 28 U.S.C. § 1350 note, Pub. L. 102-256,[3] the United Nations Charter, various international treaties and declarations, federal common law, California common law, and unenumerated California statutes. *Id*. ¶ 57. Plaintiffs' enumerated causes of action are for extrajudicial killing; torture; crimes against humanity; cruel, inhuman, and degrading treatment; wrongful death; and intentional infliction of emotional distress. *Id*. at 18-22.

DCAG moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Order at 4. The parties agreed that plaintiffs' claims do not arise out of or relate to DCAG's purported activity in California, meaning this court lacks specific jurisdiction over DCAG for the purpose of this action. *Id*. Plaintiffs, however, contend that DCAG's contacts with California are so systematic and continuous that this court has general jurisdiction over DCAG; among plaintiffs' arguments in favor of this is that Mercedes-Benz United States, LLC ("MBUSA")—which is wholly owned by a DCAG subsidiary, DaimlerChrysler North America Holding Company ("DCNAHC")—is an agent of DCAG. The court previously concluded in its tentative ruling that the plaintiffs had not shown that DCAG's contacts with California were such

---

[2] The ATCA does not provide substantive remedies; it is instead a jurisdictional statute. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713-14 (2004).

[3] Plaintiffs' TVPA claims are the only ones in this action over which the court would have original jurisdiction under 28 U.S.C. § 1331. This court would not have jurisdiction over any claims in this action this action under 28 U.S.C. § 1332(a) because plaintiffs are all aliens and DCAG is an entity created by German law with (as far as the court can tell on the record before it) a principal place of business in Germany. *See Faysound Ltd. v. United Coconut Chems.,* 878 F.2d 290, 294-95 (9th Cir. 1989).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—No. C-04-00194 RMW
JAH                                                                                          2

that California courts had general jurisdiction over DCAG, but stated that

> before making a final decision, limited jurisdictional discovery will be allowed on whether an agency relationship exists between DCAG and MBUSA and the ability of plaintiffs to pursue their claims in Germany (e.g., is the claim barred by the statute of limitations?) or Argentina (e.g., does Argentine law allow human rights claims against private parties acting in concert with the government?)

*Id*. at 26.

Plaintiffs' supplemental brief, however, does not so much focus on the questions the court left open but the questions the plaintiffs apparently wish the court had. Plaintiffs address the agency issue, but give scant attention to the issue of adequacy of alternate fora. Plaintiffs also raise for the first time the issue of whether Federal Rule of Civil Procedure 4(k)(2) gives the court personal jurisdiction over DCAG and request, in the event the court finds it does not have personal jurisdiction over DCAG, that the action be transferred to the federal district court in Eastern Michigan under 28 U.S.C. § 1406.

## II.  ANALYSIS

There is a two-part inquiry for determining whether this court has general jurisdiction over a defendant: (1) whether defendant has "systematic and continuous contacts" with California; and (2) whether the assertion of general jurisdiction is reasonable. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F.3d 848, 851 (9th Cir. 1993).

### A.    Agency

The first question is whether MBUSA is the agent of DCAG, and therefore whether MBUSA's contacts with California are imputed to DCAG under *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). In *Harris Rutsky*, the court stated that for jurisdictional purposes, a subsidiary corporation is considered an agent of its parent if "the subsidiary represents the parent corporation by performing services sufficiently important to the parent corporation that if it did not have a representative to perform them, the parent corporation would undertake to perform substantially similar services." *Id*. (quotation marks, brackets, and ellipses omitted).

The parties do not dispute that decades ago, DCAG used Max Hoffman and then the Studebaker-Packard Company as independent distributors for the United States market, and that since 1965, MBUSA has distributed for DCAG in the United States.[4]  The parties do dispute, however, the inference to be drawn from this evidence.  Plaintiffs argue that the eventual failure of Hoffman and Studebaker shows that either a DCAG subsidiary or DCAG itself must act as the distributor of DCAG's products in the United States.  DCAG argues that the previous use of Hoffman and Studebaker, and Toyota's current use of independent distributors show that DCAG's products can be distributed through independent distributors rather than by the activities of DCAG or a subsidiary.

The court concludes that the evidence that alternative automobile distribution channels were used by DCAG in the past and are currently used by Toyota show that distribution is not a task that "but for the existence of the subsidiary, [DCAG] would have to undertake itself."  *See id.*  This means that DCAG's contacts with California are not "systematic and continuous" and that the court lacks personal jurisdiction over DCAG.[5]  However, the court does not need to reach this conclusion, as DCAG has demonstrated that both Argentina and Germany provide plaintiffs with an adequate alternative forum for their claims.

**B.    Absence of an Alternative Forum**

   **1.    Argentina as an Alterative Forum**

In their complaint, plaintiffs alleged that "immunity laws" prevent them from pursuing their claims in Argentina.  1st Am. Compl. ¶ 56.  However, as DCAG points out, the Supreme Court of Argentina has invalidated certain immunity laws as unconstitutional, and a lower Argentine court has invalidated pardons issued to persons accused of committing serious human rights abuses during the Dirty War.  Kemner Decl., Exs. 11, 12.  Furthermore, the plaintiffs admit that three of them

---

[4] DCAG also presents evidence that Toyota cars are sold in part of the United States by non-subsidiary distributors.  Kemner Decl. ¶¶ 3-4.

[5] None of the other evidence plaintiffs present, such as the facts that 2.4 percent of worldwide sales of DCAG's products occur in California, that there is overlap between the personnel of DCAG and MBUSA, or that "DaimlerChrysler Research and Technology North America" is located within this judicial district is relevant to the issue of whether MBUSA is the agent of DCAG under *Harris Rutsky* and is beyond the scope of supplemental briefing allowed by the court.

> are pressing criminal charges, which were initiated by attorney Ricardo Monner Sans, against various Argentine government officials as well as Mercedes Benz Argentina ("MBA"). These criminal charges were first brought in 2004. Specifically, this criminal case charges defendants with wrongfully associating with the repressive forces of the Dirty-War era military, but is not seeking any compensation. This penal case is still pending.

*Id.*, Ex. 5 at 3. Three other plaintiffs admit they "are pressing" or "involved in pressing" these same charges, and five others admit participating as witnesses. *Id*. at 4-5. DCAG also presents evidence of a somewhat similar lawsuit against Ford Motor Company in Argentina. In this suit, plaintiffs have alleged that Ford worked with the Argentine military in 1976 to kidnap and torture union leaders from Ford's Argentine plant. *Id.*, Ex. 8.

On the record before the court, Argentina is an adequate alternative forum. A finding that Argentina is an adequate alternative forum precludes plaintiffs from maintaining claims under the TVPA. Section 2(b) of the TVPA provides that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." That the plaintiffs' recovery in Argentina may be less than it could be in the United States does not render Argentina an inadequate forum. *See Lueck v. Sundstrand Corp*., 236 F.3d 1137, 1143-44 (9th Cir. 2001); *see also Sarei v. Rio Tinto, PLC*, 456 F.3d 1069, 1098 (9th Cir. 2006) (noting recent trend of "more aggressive pursuit of human rights suits in" Argentina).

### 2. Germany as an Alternative Forum

The parties do not dispute that DCAG would be subject to the jurisdiction of courts in Germany. In its prior order, the court did not reach most of the parties' arguments regarding whether the plaintiffs could pursue claims against DCAG in Germany, but noted that if plaintiffs' claims would be time-barred in a German court, Germany would not "be an alternative forum available to the plaintiffs." Order at 24-25.

#### a. Equitable Tolling or a Similar Doctrine

In connection with the original briefing on the motion to dismiss, the plaintiffs submitted the declaration of their German legal expert, Kaleck. Docket no. 54, Attach. 1 ("Kaleck Decl."). Kaleck stated:

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—No. C-04-00194 RMW
JAH                                                               5

> . . . German courts do not recognize the equitable tolling principles which the U.S. courts do and which would therefore permit the Argentine plaintiffs to proceed with their claims (particularly those involving the disappearance of persons) in the U.S. despite the significant passage of time since the events in question. The German courts, lacking such an equitable tolling doctrine, would dismiss claims of this vintage as untimely. . .

*Id*. ¶ 5.[6] In their supplemental briefing, the plaintiffs do not make additional arguments that Germany would be an inadequate forum. DCAG addresses the time-bar issue with a declaration from its German legal expert, Stephan Rüzel. *See* docket no. 99. Rüzel states:

> I understand that, when U.S. courts refer to "equitable tolling," they are referring to a set of rules that stop a statute of limitations from running in certain circumstances where it would be unjust or inequitable to bar a plaintiff's claim. Germany recognizes principles that are similar to the U.S. doctrine referred to as equitable tolling. For example, under paragraph 1, section 199 of the German Civil Code (*Bürgerliches Gesetzbuch, BGB*), the limitations period applicable to plaintiffs' claims would not begin running until the end of the year, after plaintiffs became aware (or would have become aware but for gross negligence) of both: (a) the circumstances giving rise to their claims; and (b) the identity of alleged wrongdoer.
>
> Additionally, under section 206 BGB, the limitations period can be tolled because plaintiff has been prevented by *force majure* from pursuing his or her rights. German courts have recognized that one form of *force majure* can arise from a breakdown in the justice system such that a fair trial becomes impossible (*cf. Bundesgerichtshof*, Federal Court Reporter 126, 87, 97 ff.).
>
> Lack of knowledge of the claim delays accrual of a claim up to 30 years. *See* BGB Section 199, Paragraph 2 (imposing 30-year limit on the amount of time for tolling related to plaintiffs' lack of knowledge of the claim, or gross negligence in failing to obtain such knowledge). Even where the 30-year bar would normally apply, however, there may be circumstances in which *force majure* would extend the limitations period.
>
> I have reviewed the declaration that Wolfgang Kaleck submitted in support of plaintiffs' original briefing on May 16, 2005 (which was also cited in the Court's TR). Mr. Kaleck's claim that German courts do not recognize "equitable tolling" exploits a difference in nomenclature. Although German lawyers do not refer to the concepts set forth in authorities such as sections 206 and 199 BGB as "equitable tolling," it is clear that German law is similar in effect to U.S. law. Notably, Mr. Kaleck does not address section 206 or 199 BGB, or otherwise cite any authority supporting his position.

*Id*. ¶¶ 8-11 (paragraph numbering omitted). From Rüzel's latest declaration, it appears that plaintiffs' claims, which are based on events that occurred in 1976 and 1977, *see* 1st Am. Compl. ¶¶ 3-20, would not necessarily be time-barred.

---

[6] This paragraph of Kaleck's declaration generally describes DCAG's arguments before German courts regarding DCAG's attempts to prevent itself from being served with process under the Hague Convention. It is not completely clear whether Kaleck believes the section quoted above or is merely reporting DCAG's argument.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—No. C-04-00194 RMW
JAH                                    6

### b. Issues not Previously Reached

Neither party addresses in its supplemental briefing three issues not discussed in the November 22, 2005 order: whether German law would allow a human rights action against a corporation, whether Argentine citizens would have access to German courts for a suit like this one, and whether German courts can order document production.

Comparing the declarations of Kaleck and Rützel from the original briefing, though, the court notes Rüztel's declaration provides references to several relevant sources of German law: the Basic Law of 1949 (described as "the German constitution"), various federal statutory sections, case law, and applicable international treaties. *See* docket no. 62 ¶¶ 7-24. According to Rützel, "causes of action" "for the harm Plaintiffs claimed to have suffered during the 'Dirty War' . . . are available under German law," *id*. ¶ 17, "the German legal system is designed to vigorously safeguard basic individual and human rights . . . regardless of the nationality of the individual," *id*. ¶ 10, and German corporations are "liable for any damage which the board, a member of the board or other duly appointed representative may, in carrying out his duty, cause a third party," *id*. ¶ 20. He concludes that "if the Plaintiffs can prove that the tortious conduct resulted in the harm they alleged, the Plaintiffs could be entitled under German law to extensive damages to compensate for any harm and for losses suffered including damages for pain and suffering." *Id.* ¶ 25.

In his declaration, on the other hand, Kaleck states:

> In Germany, there is no special legislation covering human rights violations occurring prior to July 30, 2002. The cause of action the Argentine Plaintiffs have in the U.S. under the Alien Tort Claims Act and Torture Victims Protection Act, to obtain compensation for the alleged violations of human rights committed by the predecessor of DaimlerChrysler AG well prior to 2002, simply has no analogue in the German legal system. That is, the Argentines simply have no chance to bring a civil action for damages in German courts against DaimlerChrysler AG. Such an action would simply be impossible in Germany. Rather, the only possible action the plaintiffs might have is a criminal action in Germany against individual officials, but only German nationals, of DaimlerChrysler AG, as opposed to the company itself which would not be subject to criminal proceedings.

Kaleck Decl. ¶ 4. Kaleck cites no law in support of his claims. (He also does not explain the significance, if any, of July 30, 2002.) Kaleck also reports that DCAG vigorously argued in German courts that it could not be served with process in Germany, and that in those proceedings DCAG argued German law did not hold corporations liable for aiding "state actors in the commission of

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—No. C-04-00194 RMW
JAH                                                        7

human rights abuses" and that causes of action analogous to those here do not exist under German law. *Id*. ¶ 5. It is not clear to the court, though, whether Kaleck himself believes these assertions to be an accurate statement of German law. Furthermore, that Germany lacks causes of action analogous to the ATCA and TVPA does not necessarily mean German courts cannot provide any remedy for the harms allegedly suffered by the plaintiffs. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1175 n.5, 1178 (9th Cir. 2006).

Given Rüzel's much more thorough treatment, the court will accept his statements that German law would allow a human rights action against a corporation, that Argentine citizens would have access to German courts for a suit like this one, and that German courts can order document production, and given plaintiffs' current failure to address the argument that Germany is not an available forum, the court determines that Germany is an adequate alternative forum for the plaintiffs' claims.

Given that both Argentina and Germany could provide plaintiffs with an adequate forum, this court's exercise of general jurisdiction over DCAG in this action would be unreasonable. This court therefore concludes that it lacks general jurisdiction over DCAG for the purposes of this action.

**C.    Plaintiffs' New Arguments for Jurisdiction under Rule 4(k)(2) or Transfer under 28 U.S.C. § 1406**

Plaintiffs' arguments that this court has jurisdiction based on Rule 4(k)(2) or that this action should be transferred to the Eastern District of Michigan under 28 U.S.C. § 1406 are beyond the scope of the briefing the court requested. On this basis alone, the rejects these newly-raised arguments.

However, even considering plaintiffs' Rule 4(k)(2) argument on the merits, it fails. Under Rule 4(k)(2),

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

The Ninth Circuit has identified three requirements for application of this rule: "(1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS—No. C-04-00194 RMW
JAH                                                  8

must comport with due process." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002). As above, the unreasonableness of assertion of jurisdiction and the existence of the alternate fora of Germany and Argentina means that personal jurisdiction over DCAG would not comport with due process.

Under § 1406(a), "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Transfer under § 1406 would not "be in the interest of justice" because personal jurisdiction is lacking over DCAG.

The court does not discount the gravity of plaintiffs' allegations, but jurisdictional limitations dictate that this court is not the proper forum for their claims.

### III. ORDER

For the foregoing reasons, the court:

1. finds it lacks personal jurisdiction over DCAG; and
2. denies plaintiffs' request for transfer under 28 U.S.C. § 1406.

Judgment will be entered accordingly.

DATED: 2/12/07

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Brian Patrick Campbell | brian.campbell@ilrf.org |
| Kim E. Card | kim@chavezgertler.com |
| Daniel M. Kovalik | dkovalik@uswa.org |
| Derek J. Baxter | Derek.Baxter@ilrf.org |
| Mark Andrew Chavez | mark@chavezgertler.com |
| Terry Collingsworth | terry.collingsworth@ilrf.org |

**Counsel for Defendant:**

| | |
|---|---|
| Peter J. Messrobian | peter.messrobian@sdma.com |
| Matthew J. Kemner | mkemner@cbmlaw.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     2/12/07                              /s/ MAG
                                                    **Chambers of Judge Whyte**